UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOYOTA MOTOR SALES, U.S.A., INC, *Plaintiff*, v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS LISTED ON "SCHEDULE A", *Defendants*. | Case No. 24 cv 11959  Judge Andrea Wood |

**MOTION TO DISSOLVE PRELIMINARY
INJUNCTION AS TO DEFENDANT FANATICAL TRADING**

Pursuant to Rule 65(b)(4) of the Federal Rules of Civil Procedure and this Court's equitable authority, Defendant FANATICAL TRADING ("FANATICAL TRADING" or "Defendant") respectfully requests that the Court dissolve the Preliminary Injunction ("PI") granted in this case on January 3, 2025 as to Defendant FANATICAL TRADING, as Plaintiff TOYOTA MOTOR SALES, U.S.A., INC, ("Plaintiff" or "Toyota") failed to show that it had a likelihood to succeed on the merits. FANATICAL TRADING did not file an Opposition to Plaintiff's Motion for a Preliminary Injunction earlier, as FANATICAL TRADING attempted to resolve this matter directly with the Plaintiff to conserve judicial resources as Defendant believed it was named in this case in error. However, those discussions have stalled. FANATICAL TRADING notified Plaintiff counsel about this motion, but they have not indicated whether they oppose it.

In this case, FANATICAL TRADING offered for sale an authentic Toyota Racing Development ("TRD") product that was purchased from Premier Performance LLC, an Idaho-based automotive parts distribution company. Premier is part of the Aftermarket Performance Group ("APG") family of companies that includes Rally Sport Direct, an authorized dealer of TRD

products. *See Wholesale Capabilities from APG!*, Aftermarket Performance Group, https://www.aftermarketperformancegroup.com/wholesale-capabilities-from-apg.html (last visited Jan. 17, 2025) (describing the wholesale divisions of APG). Defendant offered this authentic product through the corresponding catalog page provided by Amazon. Counterfeiting is defined as the affixing of a registered trademark on a product not manufactured by the trademark owner. *Counterfeit, Black's Law Dictionary* (12th ed. 2024). As the product at issue is an authentic product manufactured by the Plaintiff's parent company itself, it is extremely unlikely that Plaintiff will prevail on a "counterfeiting" claim and as such, a PI is improper.

*Background*

TRD and the TRD Racing Development trademark (U.S. Trademark Registration No. 2717025) are owned by Toyota Customizing & Development, Co. ("TCD"), a Japanese corporation and sister company to the Plaintiff in this case. Defendant offered an authentic TRD door handle protector product for sale through the corresponding catalog page provided by Amazon, ASIN B07M62Z6B2. Although Defendant is based in China, Defendant's business partners with American wholesale distributors to drop-ship products located in the United States to customers in the United States. The products offered for sale by FANATICAL TRADING are **not** located in China; they are located in warehouses owned and managed by its distribution partners in the United States.

Plaintiff failed to disclose the fact that the product offered by FANATICAL TRADING was authentic and shipped from a US-based distributor in its previous filings with this Court. Plaintiff also failed to include photos of the actual product at issue that demonstrates the product is new, authentic, and was manufactured in Japan by TCD, a subsidiary of Plaintiff's parent

2

company. In fact, Plaintiff's Complaint contains no allegations about FANATICAL TRADING or the actual product being sold at all.

Rather, Plaintiff's Complaint and Request for a TRO and PI allege that the defendants in this case are an interconnected ring of "counterfeiters" conspiring to sell dangerous, illegal, counterfeit products that contain replicas of the Toyota trademarks. *See* Compl. at ¶¶ 10–14 (implying that Defendant is a member of a criminal network of counterfeiters and pirates). This is false. FANATICAL TRADING simply offered an authentic product for sale on Amazon that was available through its US-based distributor partners. FANATICAL TRADING did not upload, create, or edit any images or content on the ASIN detail page that listed this product for sale.

***Plaintiff Has Not Shown It Has a Reasonable Likelihood of Success on the Merits***

Plaintiff's vague and unsupported allegations against FANATICAL TRADING concern FANATICAL TRADING's offer for sale of a product through ASIN B07M62Z6B2, the Amazon catalog page for a TRD brand door protector. The "evidence" provided by Plaintiff to support its request for a TRO and PI consisted entirely of a PDF printout of this ASIN detail page—the page in Amazon's catalog to advertise and sell the authentic TRD product with part number TRDMS010-00029. As many docket entries in this case are still sealed, we are attaching the materials received from Plaintiff as Exhibit 1 to this filing.

The one product sold by Defendant through this ASIN was sold to Plaintiff's counsel. To investigate these very serious claims, FANATICAL TRADING asked Plaintiff to provide images of the product received in the "test buy" for counsel's review. If the product was indeed counterfeit, then Defendant was prepared to file a lawsuit against its US-based distributors for selling it counterfeit products. Plaintiff provided the images attached at the end of Exhibit 1, showing an authentic and original TRD product in the original shipping box. The shipping box

3

shows the return address of Premier Performance LLC, located at 4550 Commerce Crossing Drive, Louisville, KY 40229, an authorized US distributor of TRD products through its Rally Sport Direct division. Despite having actual knowledge (based on the test buy) that the product sold by my client was authentic and shipped from a well-known and authorized US automotive distributor, Plaintiff falsely alleged in the Complaint, Request for a TRO, and Request for a PI, that FANATICAL TRADING was trafficking in illegal counterfeit goods from China.

Counsel for Defendant reviewed the images of the disputed product and compared the accused product to the images on the TRD website and images from other authorized distributors. When counsel for Defendant pointed out that these images show an authentic product made by TRD in the original product packaging, Plaintiff's counsel responded that there is "Chinese writing" on the packaging so the product "is counterfeit." The Court can review the photos in Exhibit 1 itself and see the product packaging contains *Japanese* script, as TRD is a Japanese company and this product is made in Japan.

The evidence described above was in Plaintiff's possession prior to filing the Complaint, Request for a TRO, and Request for a PI. Plaintiff had, and still has, an obligation under Fed. R. Civ. P. 11 to update its filings when it discovers evidence that proves its statements to this Court were untrue. Counsel for Defendant first emailed Plaintiff on December 27, 2024 to raise these concerns in good faith and provided supporting documentation proving the product was authentic on January 6, 2025. Defendant has continued to provide evidence proving the authenticity of the product but Plaintiff counsel merely responds that the product "is counterfeit" because it is "from China" despite there being no evidence to support those claims. As such, Defendant must seek relief from this Court.

*Legal Standard for Injunctive Relief*

When deciding whether to grant injunctive relief under Fed. R. Civ. P. 65, a Court must consider four factors: (1) if the plaintiff's ability to be made whole by law will be destroyed if the Court does not grant the injunction, (2) if the threatened harm to the Plaintiff without the injunction outweighs the harm caused to the defendant by the injunction itself, (3) if the plaintiff has at least a reasonable probability of winning on the merits, and (4) if granting the preliminary injunction will interfere with the common good. *See Atari Inc.* v. *N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 613 (7th Cir. 1982). In this case, all four factors weigh against continuing the injunction against FANATICAL TRADING.

*Plaintiff Can be Made Whole if it Prevails on the Merits*

First, Defendant is represented by counsel who has appeared in this case. FANATICAL TRADING is not a foreign counterfeiter or pirate and has operations in the United States through its Amazon business. If Plaintiff prevails on its infringement claims, this Court can award a permanent injunction and damages to Plaintiff under 15 U.S.C. §§ 1116–1117. As such, Plaintiff's remedies at law will be preserved if the Court releases Defendant from the injunction. An analysis of factor one supports Defendant's position.

*The Actual Harm to FANATICAL TRADING Outweighs Theoretical Harm to Plaintiff*

Second, the PI is harming FANATICAL TRADING, as over $88,000 of its funds are restrained at Amazon. These are the proceeds from the sale of *other products* in its catalog. FANATICAL TRADING reviewed its records, and one (1) product was sold through the product listing identified by Plaintiff—to Plaintiff's counsel. FANATICAL TRADING earned $86 from selling one product through this listing. Yet, Plaintiff has obtained a TRO and PI that restrained over $88,000 in FANATICAL TRADING's Amazon account. Plaintiff is now using that

information (and the fact that the money is restrained) as leverage in this lawsuit. The funds restrained comprise *all the funds* earned by FANATICAL TRADING from selling *all of the products in its catalog* to its customers—with only $86 earned from the sale of Plaintiff's products. As $86 of products are at issue here, the remaining funds being restrained are unrelated to this case and should be released. This asset restraint is causing irreparable harm to FANATICAL TRADING, as it is impacting its ability to run its business and fund its defense in this case. If FANATICAL TRADING prevails on the merits, FANATICAL TRADING intends to make a claim against the bond posted in this case for improper restraint. *See* Fed. R. Civ. P. 65(c).

Dissolving the PI will cause no harm to Plaintiff, as FANATICAL TRADING has already removed its offer for this product and is currently defending itself in this case. If Plaintiff prevails on its infringement claim, which we dispute, Plaintiff has an adequate remedy at law. As such, an analysis of factor two supports Defendant's position.

***Plaintiff is Unlikely to Succeed on the Merits as this Product is Authentic***

Third, Plaintiff was only able to support its Request for a TRO and PI by failing to disclose to this Court that the manufacturer and distributor of the product at issue, TRD, is a Japanese brand owned by Plaintiff's parent company itself. Plaintiff failed to provide images of the actual product sold by Defendant to Plaintiff (which is in Plaintiff's possession) or explain how Plaintiff has concluded that *this specific product* is "counterfeit." The sole fact that an individual or company is Chinese does not make the products they sell counterfeit.

Further, as described above, the Plaintiff performed a "test buy" from Defendant where it received an authentic product shipped from a local US auto-parts distributor's warehouse in Louisville, Kentucky. Even if Plaintiffs were personally unaware of Premier Performance LLC and Rally Sport Direct, a simple Google search of the return address on the test buy brings up the

website for the distributor—including information about Rally Sport Direct being an authorized dealer of TRD products! *See TRD JDM Carbon Fiber Door Handle Protector,* rallysportdirect*, https://www.rallysportdirect.com/products/ms010-00018-trd-jdm-carbon-fiber-door-handle-protector* (last visited Jan. 17, 2025) (displaying the official TRD logo in red beneath the "add to cart" button and proclaiming the authorized dealer relationship). Under Rule 11, Plaintiff has an obligation to do a reasonable investigation before bringing claims and requesting extraordinary relief in Federal Court. Rather than inspecting the product sold by Defendant in this action, which would have shown Plaintiff that the product was authentic, Plaintiff merely assumed the product was counterfeit because the Defendant is Chinese. Plaintiff then failed to update this Court or correct its filings when notified of these facts repeatedly—and provided with supporting documentation—by the undersigned counsel. Plaintiff's failure to disclose this important fact led to the improper restraint of FANATICAL TRADING's assets by this Court. An analysis of factor three supports Defendant's position.

***Dissolving this Injunction is in the Public's Interest***

Fourth, dissolving this injunction is in the public interest as Plaintiff should not be granted the extreme (and previously rare) remedy of an injunction without doing even basic due diligence into the hundreds of entities they name in these Schedule A cases. The Supreme Court has noted that injunctions are such powerful remedies that they require greater scrutiny. *See Grupo Mexicano de Desarrollo S.A.* v. *All. Bond Fund, Inc.*, 527 U.S. 308, 318, 322 (1999) (stating that preliminary injunctions cannot be used to effectively extract a remedy at law, and that such injunctions can only provide for the preservation of remedies at law if a federal statute expressly authorizes it) ("*Grupo*"). *Grupo* has been applied to this question by this District Court in similar Schedule A cases. *See* Notification of Docket Entry, *Shenzhen Yihong Lighting Co., Ltd.* v. *The*

7

*Partnerships and Unincorporated Associations Identified on Schedule A*, No. 23 cv 01560 (N.D. Ill. Nov. 22, 2023) (stating "[t]he Supreme Court has made clear that courts lack the power to issue an asset freeze at the beginning of a case unless that party is seeking equitable monetary relief."). The restraint of over $88,000 only restrains FANATICAL TRADING's ability to pay its employees, suppliers, and vendors: a reasonable equitable remedy under *Grupo* and 15 U.S.C. § 1116 would be, at best, an injunction against selling the disputed product while the case proceeds—something FANATICAL TRADING has already voluntarily done.

There is a strong public interest in fair, open, and equitable litigation. In "Schedule A" cases like this one, Plaintiffs are provided leeway that is not granted to litigants in ordinary business litigation cases because of the exaggerated dangers of "overseas counterfeiting." *See Sarah Fackrell*, *The Counterfeit Sham*, 138 Harv. L. Rev. 471 (2024), *available at* SSRN: https://ssrn.com/abstract=4549909; Eric Goldman, *A SAD Scheme of Abusive Intellectual Property Litigation*, 123 Columbia Law Review Forum 183 (2023), *available at* SSRN: https://ssrn.com/abstract=4381824. When Defendants appear, they should be given similar flexibility to ensure they have an adequate opportunity to defend themselves. The deck is already stacked against them: their funds are frozen for weeks in secret so they cannot afford experienced counsel, the Complaints are bare and lack sufficient information for defendants to do an investigation themselves, their businesses are effectively shut down, the proceedings are sealed so they cannot obtain counsel and respond in a timely way, they are often small businesses unfamiliar with the legal system and federal courts in particular, and they do not have the impressive machinery of the well-funded Plaintiff bar behind them. Plaintiffs should not be rewarded for intentionally misleading this Court and the public about the facts in dispute in the cases they bring. As such, the fourth factor also supports dissolving this PI.

To conclude, all four factors weigh against sustaining the injunction against FANATICAL TRADING. The irreparable harm of destroying FANATICAL TRADING's cash flow and business vastly outweighs Plaintiff's interest in preserving a pool of money to fund Plaintiff's imagined future monetary damages award if Plaintiff happened to prevail in the underlying case—a purpose explicitly prohibited by *Grupo*. Again, under *Grupo*, District Courts do not have the authority to freeze defendants' assets for the impermissible purpose of preserving plaintiffs' possible remedy at law rather than any ostensible equitable remedy.

*Request for Relief*

A TRO and PI are inappropriate in this case as Defendant is represented by counsel who has appeared in this case. The allegations as to Defendant FANATICAL TRADING concern the sale of only 1 product—a product sold to Plaintiff's counsel. The product at issue is an authentic product manufactured by TRD Japan so it is not infringing under the law as FANATICAL TRADING will prove in its forthcoming motion to dismiss the case. Releasing Defendant from the PI will not result in irreparable harm to Plaintiff as FANATICAL TRADING voluntarily removed its offer from Amazon pending resolution of this matter. Further, Plaintiff has an adequate remedy at law as if Plaintiff can prove infringement, the Court can award monetary damages under 15 U.S.C. § 1117 and a permanent injunction under § 1116.

For the foregoing reasons, we respectfully request that the Court dissolve the PI as to Defendant FANATICAL TRADING pursuant to Rule 65(b)(4) to prevent further unwarranted harm to FANATICAL TRADING's business. We also ask that this Court order Plaintiff to notify Amazon that the TRO and PI have been dissolved as to FANATICAL TRADING and certify that has been completed to this Court within two days of the Court's order. FANATICAL TRADING respectfully requests that Plaintiff be required to increase the bond posted in this case. Plaintiff's

$10,000 bond is not sufficient to make Defendant whole when Defendant prevails on the merits in this case. Finally, based on the information provided above concerning Plaintiff's representations to the Court in this matter, we ask this Court to take any other actions that it deems just and proper as to the other Schedule A defendants that may be similarly situated to FANATICAL TRADING. Defendant reserves its right to seek sanctions under Fed. R. Civ. P. 11 at a later date.

Dated: January 17, 2025
By:

/s/ *Casey A. Hewitt*
Casey A. Hewitt, NH Bar No. 273603
casey@hewittpllc.com
Hewitt Law PLLC
41 Cottage St., Ste 2
Littleton, NH 03561
(603) 991-1876

*Attorney for Defendant* FANATICAL TRADING